UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK HITSMAN,

        Plaintiff,

v.

LAST STEP RECOVERY LLC,
KIARA F. SESSIONS,
JAYNA MONICA LEAR, and
JARON CHARLES CALDWELL,

        Defendants.

_____/

<u>COMPLAINT</u>

**I.**    **Introduction**

1.    Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit account and debt. Defendants are debt collectors and credit identity thieves who acquired plaintiff's stolen personal and financial information along with the counterfeit account, and then contacted and falsely threatened plaintiff with litigation, prosecution and other adverse consequences unless plaintiff paid defendants money to satisfy the non-existent debt.

2.    Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq*., Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq*.

3.    On November 4, 2015, the Federal Trade Commission and other law enforcement

1

authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

4.     On September 29, 2020, the "Federal Trade Commission, along with more than 50 federal and state law enforcement partners . . . announced a nationwide law enforcement and outreach initiative to protect consumers from phantom debt collection and abusive and threatening debt collection practices . . . [with two new FTC cases against companies that] were trying to collect debts they cannot legally collect or that a consumer does not owe – a practice known as phantom debt collection." See https://www.ftc.gov/news-events/press-releases/2020/ 09/ftc-state-federal-law-enforcement-partners-announce-nationwide.

5.     The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information.

6.     Defendants have knowingly and unlawfully acquired, transferred, shared among themselves and used, plaintiff's stolen personal and financial information, in furtherance of their

joint enterprise to contact and coerce the payment of money from plaintiff through false threats of litigation and prosecution, claiming money due on a fake debt, in violation of the FDCPA, DPPA and Michigan law.

## II.     Jurisdiction

7.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

## III.    Parties

8.      Plaintiff Jack Hitsman is an adult, natural person residing in Montcalm County, Michigan. Mr. Hitsman is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mr. Hitsman is a "person" as the term is defined and used in the DPPA. Mr. Hitsman is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

9.      Defendant Last Step Recovery LLC ("LSR") is an active Georgia limited liability company (Georgia Control No. 20142924), formed July 30, 2020. According to the LSR Annual Registration filed January 14, 2021, the "Principal Office Address" for LSR is 217 Nellie Trace SE, Mableton, Georgia 30126, which is the probable current residential address for defendant Kiara F. Sessions. The registered agent for LSR is Kiara F. Sessions, 217 Nellie Trace SE, Mableton, Georgia 30126. LSR uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. LSR regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. LSR is a

"debt collector" as the term is defined and used in the FDCPA. LSR is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, LSR is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

10.     LSR and it employees and agents use multiple, unregistered aliases for LSR, including: LSR; Last Step; Last Step Recovery; LastStep Recovery; LSR Payment Processing; Gonzales Firm; Gonzales Law Firm; and Carmen Gonzales Law Firm.

11.     LSR and it employees and agents use multiple emails to operate their credit identity theft and debt collection scam, including: lsrpaymentprocessing@gmail.com.

12.     On September 28, 2020, defendants anonymously registered through Wild West Domains, LLC and Domains by Proxy, LLC, the internet domain www.LastStepRecovery.com. The domain links to an active website that provides a contact telephone number, 404-980-9110, which is a cellular telephone registered to defendant Kiara F. Sessions. The website also provides a contact email address, lastchancerecovery@yahoo.com.

13.     LSR through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

14.     Defendant Kiara F. Sessions, also known as Kiara Faeshun Sessions, also known as Kiara F. Roberts, is a natural person, age 31, purportedly residing at 217 Nellie Trace SE, Mableton, Georgia 30126. Ms. Sessions is an owner, officer, member, manager, employee and agent of defendant LSR. Ms. Sessions uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Sessions regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Sessions is a "debt collector" as the term is defined and used in the FDCPA. Ms. Sessions is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Sessions is

a "collection agency" and "licensee" as the terms are defined and used in the MOC.

15.     Ms. Sessions has used multiple, unregistered aliases to operate her credit identity theft and debt collection scam, including: Carmen Gonzales; and Samantha Harris.

16.     Ms. Sessions has used multiple telephone numbers and email addresses in connection with the operation of defendants' credit identity theft and debt collection scam, including: 404-980-9110; 404-228-9774; and 404-445-7340; and kfsessions810@yahoo.com.

17.     Ms. Sessions maintains a profile on www.linkedin.com, stating that Ms. Sessions has been a Sales Associate at TruGreen in Atlanta, Georgia from January 2016 to the present.

18.     Ms. Sessions is a repeat criminal offender and convicted felon, involving crimes of theft and dishonesty, including a criminal indictment in federal court for credit identity theft.

19.     On May 11, 2007, Ms. Sessions was charged in Cobb County, Georgia with Aggravated Battery – Felony, Case No. 079024841.

20.     On August 21, 2009, Ms. Sessions was charged in Cobb County, Georgia with Shoplifting – Felony, Case No. 099036511.

21.     On December 1, 2010, Ms. Sessions was charged in Dekalb County, Georgia with Criminal Trespass, Offense Code 16-7-21, Case No. 10C29531.

22.     On September 29, 2015, Ms. Sessions was charged in Dekalb County, Georgia with Theft by Shoplifting, Offense Code 16-8-14, Case No. 15C86673B, was found guilty, and was sentenced to twelve months probation.

23.     On January 17, 2017, Ms. Sessions was indicted in the United States District Court for the Northern District of Georgia, Atlanta Division, in a fifteen count indictment for Theft of Public Money (18 U.S.C. §§ 641, 642); Aggravated Identity Theft (18 U.S.C. § 1028A(1) and (2)); and Fraud and Related Activity in Connection with Possession of

Unauthorized Access Device (18 U.S.C. § 1029(a)(1) and (2)). As stated in the court documents, Ms. Sessions obtained and used the stolen information of numerous individuals, including names, Social Security Numbers, dates of birth, addresses, and other private and personal information, to file fake tax returns with the United States Department of Treasury and obtain and steal tax refunds to which Ms. Sessions was not entitled. On September 5, 2017, Ms. Sessions entered a Guilty Plea on one court for Theft of Public Money, 18 U.S.C. §§ 641, 642. On January 11, 2018, the court sentenced Ms. Sessions to three years probation, plus judgment for restitution in the amount of $61,522.00. On March 23, 2020, Ms. Sessions filed a motion for early termination of probation, with counsel claiming that Ms. Sessions had become a model citizen, leader and inspiration to those around her, having founded a recreational kickball team for her two children, as well as spearheaded a Christmas coat drive for those in need. On March 25, 2020, the court improvidently  terminated the probation of Ms. Sessions. Four months later, on July 30, 2020, Ms. Sessions formed Last Step Recovery LLC, and began operating her current credit identity theft and debt collection scam.

24.     On May 4, 2015, Ms. Sessions filed for Chapter 7 Bankruptcy, and on November 16, 2015 received a discharge. *In re Kiara Faeshun Sessions*, U.S. Bankruptcy Court, Northern District of Georgia (Atlanta), Bankruptcy Petition No. 15:58459-wlh.

25.     Non-party Klassy Kloset LLC is an active Georgia limited liability company (Georgia Control No. 19143312), formed October 25, 2019, with the "Principal Office Address" at 217 Nellie Trace SE, Mableton, Georgia 30126, which is the probable current residential address for defendant Kiara F. Sessions and the principal office address for defendant LSR. The registered agent is Kiara F. Sessions, 217 Nellie Trace SE, Mableton, Georgia 30126. It will need to be determined in discovery whether Klassy Kloset LLC participated in the efforts to collect an

alleged debt from Mr. Hitsman that are described in this complaint.

26.     Ms. Sessions (a) created the collection policies and procedures used by LSR and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of LSR, (c) oversaw the application of the collection policies and procedures used by LSR and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by LSR and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Hitsman as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by LSR and its employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by LSR and its employees and agents, in attempts to collect an alleged debt from Mr. Hitsman as stated in this complaint.

27.     Ms. Sessions directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

28.     Defendant Jayna Monica Lear is a natural person, age 47, purportedly residing at 7121 Crystal Creek Place, Douglasville, Georgia 30134, or 1345 Towne Lake Hills South Drive, Building 900-101, Woodstock, Georgia 30189, or 3802 Tree Corners Parkway, Peachtree Corners, Georgia 30092. Ms. Lear is an employee and agent of defendant LSR. Ms. Lear uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Lear regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Lear is a "debt collector" as the term is defined and used in the FDCPA. Ms. Lear is a "regulated person" as the term is defined and used in the

MRCPA. Alternatively, Ms. Lear is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

29.     Ms. Lear has used multiple, unregistered aliases to operate her credit identity theft and debt collection scam, including: "Monica."

30.     Ms. Lear maintains the email address jaynalear@yahoo.com.

31.     Ms. Lear maintains a profile on www.linkedin.com, stating that Ms. Lear is a "Sales Specialist at Tru Green Lawn Company."

32.     Ms. Lear (a) created the collection policies and procedures used by LSR and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of LSR, (c) oversaw the application of the collection policies and procedures used by LSR and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by LSR and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Hitsman as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by LSR and its employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by LSR and its employees and agents, in attempts to collect an alleged debt from Mr. Hitsman as stated in this complaint.

33.     Ms. Lear directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

34.     Defendant Jaron Charles Caldwell, also known as Javon Charles Caldwell, also

known as Ron Caldwell, also known as Ronnie Caldwell, also known as Jaron "Play" Caldwell, is a natural person, age 40, purportedly residing at 4043 Kingsbrook Boulevard, Decatur, Georgia 30034. Mr. Caldwell is an employee and agent of defendant LSR. Mr. Caldwell uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Caldwell regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Caldwell is a "debt collector" as the term is defined and used in the FDCPA. Mr. Caldwell is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Caldwell is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

35.     Mr. Caldwell has used multiple, unregistered aliases to operate his credit identity theft and debt collection scam, including: "Chuck Bell."

36.     Mr. Caldwell maintains the email address play2303@gmail.com.

37.     According to the State of North Carolina, Mr. Caldwell, "Offender ID: 0691357," is a convicted felon, with numerous convictions, mostly involving the possession and sale of illegal drugs.

38.     Mr. Caldwell (a) created the collection policies and procedures used by LSR and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of LSR, (c) oversaw the application of the collection policies and procedures used by LSR and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by LSR and its employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Hitsman as stated in this complaint, (e) ratified the

unlawful debt collection practices and procedures used by LSR and its employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by LSR and its employees and agents, in attempts to collect an alleged debt from Mr. Hitsman as stated in this complaint.

39.     Mr. Caldwell directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

40.     Defendants and their employees and agents have used multiple telephone numbers to operate their credit identity theft and debt collection scam, including: 302-469-4246; 404-980-9110; 404-228-9774; 404-445-7340; 517-489-3016; 833-922-3500; and 888-892-3109.

41.     Defendants and their employees and agents have used multiple addresses in connection with the operation of their credit identity theft and debt collection scam, including: "LSR Payment Processing, P.O. Box 684, Alpharetta, Georgia 30004."

42.     Defendants use a Merchant Account that they have established in the name of "Last Step Recovery LLC," telephone number 888-892-3109, to receive debit card and credit card payments from defendants' victims. The Acquiring Bank for Defendants' Merchant Account is Commercial Bank of California, 19752 MacArthur Boulevard, Irvine, California 92612. The application that was filed by defendants with the ISO and Acquiring Bank to create the Merchant Account, as well as the related monthly statements and other account records, will need to be obtained from the ISO and Acquiring Bank via subpoenas in discovery, so that Plaintiff can identify the other entities involved in defendants' debt collection scam. Defendants have used the Merchant Account and the access it provides to the banking system, to defraud consumers out of

10

thousands of dollars.

43.     Plaintiff is proceeding against defendants collectively under a common enterprise

theory, under which "each entity within a set of interrelated companies may be held jointly and

severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club,

Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a

"maze of interrelated companies," exists, courts consider "the pattern and framework of the

whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no

one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain

officers and employees in common, (2) operate under common control, (3) share offices, (4)

commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at

469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011

WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an

alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise

may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-

1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*,

No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

44.     All defendants, along with other companies, employees and agents to be identified

in discovery and named as additional defendants in this lawsuit, are intricately bound together

and combine their efforts in a joint and common enterprise and use concerted attempts to collect

debts allegedly owed by consumers throughout the United States. Defendants and the other

entities operate collectively and together, in such as way that they are collecting debts for the

benefit of each other, and making each participant jointly and severally for the unlawful acts of

each of the other participants.

45.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

46.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.     Facts**

47.     On or about January 31, 2006, plaintiff Jack Hitsman obtained a loan from CitiFinancial Auto ("CitiFinancial") to purchase a Ford Econoline motor vehicle for personal, family and household purposes. CitiFinancial assigned the account the number 1022627729. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA, MRCPA and MOC.

48.     In 2010, Mr. Hitsman became seriously ill, unable to work, and disabled. Mr. Hitsman fell behind on his monthly payments to CitiFinancial. Mr. Hitsman's account went into default. Mr. Hitsman has not made a payment on the account since 2010.

49.     On or about August 15, 2010, CitiFinancial repossessed the vehicle from Mr. Hitsman.

50.     By letter dated September 6, 2010, CitiFinancial notified Mr. Hitsman that his delinquent account and related debt had been assigned to Santander Consumer USA Inc. ("Santander"). The letter also stated that Santander had assigned the account a new account number, 2615411, also sometimes known as account number 30000126154111000.

51.     In September 2010, Santander sold the vehicle at auction for approximately $8,600.00. Santander applied the proceeds to the account balance of approximately $13,000.00, leaving Mr. Hitsman owing Santander an alleged deficiency balance of $5,474.87.

52.     However, Santander failed to send Mr. Hitsman a timely and proper notice of intended sale of the vehicle prior to the sale of the motor vehicle as required by the Uniform Commercial Code as enacted in Michigan. MCL 440.9610; MCL 440.9611; MCL 440.9612; MCL 440.9613; and MCL 440.9614.

53.     Because Santander failed to comply with the notice requirements of MCL 440.9613 and MCL 440.9614, Santander became "absolutely barred" from collecting any deficiency balance related to the sale of the repossessed motor vehicle. *State Bank of Standish v. Keysor,* 166 Mich App 93 (1988); *Honor State Bank v. Timber Wolf Constr. Co.,* 151 Mich App 681 (1986). By operation of law, any debt that Mr. Hitsman may have owed on the vehicle was satisfied in full by the money received by Santander for the sale of the vehicle, leaving Mr. Hitsman with an account balance of zero.

54.     Regardless, and apart from Santander's violations of the UCC, any claim that Santander may have had against Mr. Hitsman in connection with the account became time-barred and judicially unenforceable in 2014 by operation of the four-year statute of limitations found in the Michigan UCC, MCL 440.2725. *See Harden v. Autovest, L.L.C.,* No. 1:15-cv-34, 2015 WL 4583276, *2-5 (W.D. Mich. July 29, 2015).

55.     Mr. Hitsman disputes owing any money to CitiFinancial, Santander, or anyone else in connection with the account.

56.     Mr. Hitsman expressly refuses to pay any money to CitiFinancial, Santander, or anyone else in connection with the account.

57.     In or about 2014, Santander offered to sell more than 100,000 delinquent automobile loan accounts. As part of that process, Santander provided substantial information regarding the accounts to multiple, prospective purchasers and brokers for evaluation. The prospective purchasers and brokers signed non-disclosure agreements for all accounts that were not purchased from Santander.

58.     Between July 25, 2014 and June 9, 2015, Santander sold more than 100,000

delinquent automobile loan accounts to non-party Cascade Capital, LLC ("Cascade"), a California limited liability company. Mr. Hitsman's account was included in the sale from Santander to Cascade.

59. Unbeknownst to Cascade, one or more of the prospective purchasers or brokers that had received and reviewed account information from Santander, retained and stole the information for more than 100,000 Santander accounts, including information regarding Mr. Hitsman's account.

60. Thereafter, non-party D'Juan Dale Leverette obtained the stolen information for more than 100,000 Santander accounts, including the stolen information regarding Mr. Hitsman's account.

61. In or about May 2017, Mr. Leverette provided Mr. Hitsman's stolen account information to an entity named Riley, Allen & Associate's LLC ("RAA"), located in Charlotte, North Carolina.

62. In May 2017, an employee and agent of RAA **(Scam Operation No. 1)**, contacted and communicated with Mr. Hitsman and his wife, Debra Hitsman, regarding the account. The RAA employees stated that a company named "Constar" had purchased the account, that Mr. Hitsman owed a balance of $7,232.60, and that RAA had been hired to collect the money from Mr. Hitsman. The RAA employees falsely stated that a civil lawsuit had been filed against Mr. Hitsman, and that if Mr. Hitsman did not immediately make arrangements to pay $2,169.00, Mr. Hitsman was going to be arrested by the sheriff and prosecuted. Hearing that, Mrs. Hitsman made a payment to RAA, which was processed by an entity named Regional Processing Services LLC ("RPS").

63.     In May 2017, Mr. Hitsman's attorney contacted Cascade regarding the account. Cascade claimed that: (a) Cascade was the lawful owner of Mr. Hitsman's account; (b) RAA was not authorized to collect the account; (c) RAA had somehow acquired a large portfolio of stolen CitiFinancial/Santander accounts, including Mr. Hitsman's account; and (d) multiple consumers had contacted Cascade and complained that RAA was falsely threatening the consumers with arrest, prosecution and litigation unless the consumers paid money to RAA based on stolen accounts and stolen consumer information that was purchased by and belonged to Cascade.

64.     On or about June 2, 2017, Mr. Hitsman and Mrs. Hitsman, RAA and RPS, all through counsel, reached a confidential settlement and resolved their dispute.

65.     On August 8, 2017, Cascade Capital, LLC filed a lawsuit against DRS Processing LLC ("DRS"), dba Miller Stark Klein & Associates, in the United States District Court for the Western District of North Carolina, Charlotte Division, Case No. 3:17-cv-470, alleging that DRS had obtained stolen information for more than 100,000 delinquent automobile loan accounts that had been purchased by Cascade from Santander, and that DRS had unlawfully used the stolen information to contact and threaten consumers with litigation and prosecution unless the consumers paid money to DRS. According to documents filed in the lawsuit by DRS and its owner, Darryl Miller, the stolen information was contained in thirty-one portfolios purchased during the course of 2017 by DRS from D'Juan Dale Leverette. DRS and Mr. Miller paid for the stolen information by wiring more than $200,000.00 to an account owned by Mr. Leverette.

66.     In February 2018, Mr. Hitsman and his family again began to receive threatening telephone calls regarding the Citifinancial/Santander account.

67.     On February 27, 2018, employees and agents of an entity named United Merchant

16

Asset Recovery, LLC ("UMAR") **(Scam Operation No. 2)**, contacted and communicated with Mr. Hitsman and his wife and falsely stated that (a) UMAR had been "retained" by Santander to collect money from Mr. Hitsman in connection with his account; (b) Mr. Hitsman owed more than $5,000.00; (c) a "team of attorneys" was "managing the litigation" to collect money from Mr. Hitsman; (d) a lawsuit had already been filed by Santander against Mr. Hitsman to collect the debt; (e) if Mr. Hitsman paid money, documents would be filed that day to stop the lawsuit; (f) Mr. Hitsman was "guilty" of breach of contract and fraud; (g) if Mr. Hitsman did not pay money that day, Mr. Hitsman would have to appear in court and the judge would rule that Mr. Hitsman owed thousands of dollars more in interest, court costs and attorney fees; and (g) a lien was going to be placed on Mr. Hitsman's home and other assets, and his wages were going to be garnished.

68.     On February 4, 2019, Mr. Hitsman and his wife filed a lawsuit against UMAR and others in the United States District Court for the Western District of Michigan, Case No. 1:19-cv-82, alleging that UMAR had obtained and used Mr. Hitsman's stolen Santander account and stolen personal and financial information, to contact and falsely threaten Mr. Hitsman with litigation and prosecution unless Mr. Hitsman paid money to UMAR.

69.     On or about February 27, 2019, Mr. Hitsman and Mrs. Hitsman, and UMAR and the other defendants, reached a confidential settlement, resolved their dispute, and the lawsuit was dismissed.

70.     According to UMAR and its owners, Mr. Hitsman's stolen account information and stolen personal and financial information was obtained by UMAR in a portfolio of stolen Santander accounts that UMAR purchased in or about January of 2018 from "D'Juan Leverette, 11623 Sweet Rose Court, Charlotte, North Carolina 28269, telephone number 770-906-4652."

According to UMAR and its owners, at the request of Mr. Leverette, UMAR paid defendants for the portfolio of stolen Santander accounts by wiring funds (Wire Transfer No. 121000248) to a Wells Fargo, N.A. business account (No. 114827xxxx), maintained for the benefit of all defendants, in the name of "Precious Stephens, Precious Health and Wellness Spa, LLC, 1015 Oakenshaw Street, Fort Mill, South Carolina 29715."

71.     On March 18, 2019, Mr. Hitsman filed a lawsuit against D'Juan Dale Leverette and others **(Scam Operation No. 3)**, in the United States District Court for the Western District of Michigan, Case No. 1:19-cv-207, alleging that the defendants had obtained and used Mr. Hitsman's stolen Santander account and stolen personal and financial information, in a scheme to contact and falsely threaten Mr. Hitsman with litigation and prosecution unless Mr. Hitsman paid money to defendants and others.

72.     On August 27, 2019, the Court entered default judgment in favor of Mr. Hitsman and against defendants D'Juan Dale Leverette, Precious Grace Kelly, Jonathan Joel Dimusto, Manuel Menal Strong, Atlantic Mediation Group, LLC, Atlantic Solutions Group, LLC, and Precious Health and Wellness Spa, LLC for violating the FDCPA, DPPA and Michigan law. On November 18, 2019, the Court granted Mr. Hitsman's motion for costs and attorney fees, awarding Mr. Hitsman judgment in the total amount of $18.998.84.

73.     In February 2020, Mr. Hitsman and his family again received calls from debt collectors and credit identity thieves **(Scam Operation No. 4)**, regarding the Citifinancial/Santander account, again threatening Mr. Hitsman with prosecution, litigation and other adverse consequences, unless Mr. Hitsman paid money to the callers.

74.     On April 13, 2020, Mr. Hitsman filed a lawsuit in the United States District Court

for the Western District of Michigan, Case No. 1:20-cv-319, *Jack Hitsman v. Fairview Mediation Group Inc, et al.*, Case No. 1:20-cv-319, alleging that the callers had obtained and used Mr. Hitsman's stolen Santander account and stolen personal and financial information, to contact and falsely threaten Mr. Hitsman with litigation, prosecution and other adverse consequences, unless Mr. Hitsman paid money to the defendants.

75.     On or about May 26, 2020, Mr. Hitsman and the defendants in Case No. 1:20-cv-319 reached a confidential settlement, resolved their dispute, and the lawsuit was dismissed.

76.     In July 2020, Mr. Hitsman and his family again received calls from debt collectors and credit identity thieves (**Scam Operation No. 5**), regarding the Citifinancial/Santander account, again threatening Mr. Hitsman with prosecution, litigation and other adverse consequences, unless Mr. Hitsman paid money to the callers.

77.     On July 22, 2020, Mr. Hitsman filed a lawsuit against Liberty Solutions & Associates, LLC, LSA Processing System, LLC, National Landmark Logistics, LLC, Jean Pierre Cellent, Eric David Dennison and James Cle Dennison, and others, in the United States District Court for the Western District of Michigan, Case No. 1:20-cv-677, alleging that the defendants had obtained and used Mr. Hitsman's stolen Santander account and stolen personal and financial information, to contact and falsely threaten Mr. Hitsman with litigation and prosecution unless Mr. Hitsman paid money to the defendants.

78.     Unbeknownst to Mr. Hitsman, on July 13, 2020, the Federal Trade Commission a lawsuit (under seal) against Liberty Solutions & Associates, LLC, LSA Processing System, LLC, National Landmark Logistics, LLC, Jean Pierre Cellent, Eric David Dennison and James Cle Dennison, and others, in the United States District Court for the District of South Carolina,

Rock Hill Division, Case No. 0:20-cv-02592-JMC, pursuant to which the assets of the named defendants were seized and placed in receivership. The FTC action alleges that over a period of several years, the defendants cheated consumers out of $13.7 million, using the same credit identity theft and debt collection scam that is described in this complaint. The FTC action remains ongoing.

79.     On or about September 29, 2020, Mr. Hitsman, Jean Pierre Cellent, and some of the other defendants, reached a confidential settlement, resolved their dispute, and the lawsuit was dismissed.

80.     In September 2020, Mr. Hitsman and his family again received calls from debt collectors and credit identity thieves (**Scam Operation No. 6**), regarding the Citifinancial/Santander account, again threatening Mr. Hitsman with prosecution, litigation and other adverse consequences, unless Mr. Hitsman paid money to the callers.

81.     On September 16, 2020, Mr. Hitsman filed a lawsuit against Solace Group LLC, Amrak Solutions Group LLC, and Violet M. Kimble, in the United States District Court for the Western District of Michigan, Case No. 1:20-cv-902, alleging that the defendants had obtained and used Mr. Hitsman's stolen Santander account and stolen personal and financial information, to contact and falsely threaten Mr. Hitsman with litigation and prosecution unless Mr. Hitsman paid money to the defendants. The lawsuit remains pending.

82.     In January 2021, Mr. Hitsman and his family again received calls from debt collectors and credit identity thieves (**Scam Operation No. 7**), regarding the Citifinancial/Santander account, again threatening Mr. Hitsman with prosecution, litigation and other adverse consequences, unless Mr. Hitsman paid money to the callers.

83.     On January 29, 2021, Mr. Hitsman filed a lawsuit against Final Resolutions, L.L.C., CHJ & Associates LLC, Lachia P. Logan, and Carlotta A. Huggins, in the United States District Court for the Western District of Michigan, Case No. 1:21-cv-102, alleging that the defendants had obtained and used Mr. Hitsman's stolen Santander account and stolen personal and financial information, to contact and falsely threaten Mr. Hitsman with litigation and prosecution unless Mr. Hitsman paid money to the defendants. The lawsuit remains pending.

84.     Despite the foregoing, and as described below, in February 2021, Mr. Hitsman and his family again received calls from debt collectors and credit identity thieves (**Scam Operation No. 8**), regarding the Citifinancial/Santander account, again threatening Mr. Hitsman with prosecution, litigation and other adverse consequences, unless Mr. Hitsman paid money to the callers.

85.     The defendants named in this lawsuit are the most recent credit identity thieves and debt collection scam operators to unlawfully acquire and use Mr. Hitsman's stolen personal information to contact Mr. Hitsman and his family and falsely threaten Mr. Hitsman with prosecution, litigation and other adverse consequences, in efforts to extort the payment of money from Mr. Hitsman.

86.     On February 24, 2021, defendants placed a call from telephone number 302-469-4246 to Mr. Hitsman's telephone in efforts to extort the payment of money from Mr. Hitsman. According to Mr. Hitsman's caller ID, defendants' telephone number belonged to ""LSR."

87.     On February 25, 2021, Mr. Hitsman's wife, Debra Hitsman, made a return call to telephone number 302-469-4246 and spoke with defendants' employee and agent, who identified herself as "Monica" with the "Carmen Gonzales Law Firm." Monica transferred Ms. Hitsman to

defendants' employee and agent, who identified herself as "Samantha Harris" with the "Carmen Gonzales Law Firm." In the ensuing conversation, defendants' employee and agent made the following representations:

a)      "My name is Samantha Harris. My extension is 107."

b)      "I work for the Carmen Gonzales Law Firm."

c)      "I work in the Mediation Department of the Carmen Gonzales Law Firm."

d)      "The reason why we're calling Mr. Hitsman is we have a case against him with two pending charges. One is a breach of contract, the second is intent to defraud a financial institute. We work with the law firm, the Carmen Gonzales Law Firm. They're representing Santander. We are the Mediation Department of that law firm. What we do is call defendants to offer them a settlement out of court. They're representing Santander. Santander is a financial company that financed a Ford truck for your husband. It was a 2002 Ford truck and there was a balance left on that vehicle and so they're taking him to court to sue him for the unpaid balance. Like I said, right? So now they have two charges. One is a breach of contract. That second is intent to defraud a financial institute. They're showing the balance that is owed is $7,232.50. If he wants to settle out of court I can offer him a settlement offer, offer him a settlement of $1,550. If he paid the $1,500, he'd get a cease and desist letter and a paid in full letter stating that he settled it out of court for that amount."

Ms. Hitsman stated that she would need to discuss the matter with Mr. Hitsman and terminated

the call.

88.     On February 25, 2021, a return call was made to telephone number 302-469-4246, which was answered by defendants' employee and agent, who identified himself as "Chuck Bell" with the "Carmen Gonzales Law Firm." In the ensuing conversation, defendants' employee and agent made the following representations:

a)      "My name is Chuck Bell. My telephone number is 833-922-3500, Extension 106."

b)      "I work for the Carmen Gonzalez Law Firm."

c)      "There is a couple of complaints that have been, there's a couple of complaints that have been filed in your name. You know, the breach of contract along with the intent to defraud a financial institution."

d)      "It's in reference to the Ford Econoline. The Ford truck that you financed through Santander. Santander is the parent lender here in this matter. That's who is pursuing the balance. Santander is our client."

e)      "What it is is a breach of contract along with the intent to defraud a financial institution. Our client here is claiming to pursue the outstanding balance on this matter of $5,232.60. They have offered an amnesty payout. A one-time payment to bring it to zero balance for $1,550.00. And we were looking to see how you guys wanted to take care of that matter. If you wanted to take your chances in court or settle outside of going to court."

f)      "As a counter-offer what would you feel comfortable settling for? I can

23

present that to the attorney and see if we could do something to help you out here just to get this off. This is a really good time with of course what we're going through with the pandemic. They're doing a lot of leniency here on these accounts just to get them out of the way to bring some resolve to a lot of these clients. These cases have been open for a while, so what do you feel comfortable with settling or maybe offering the attorney to see if we can settle out?"

g)    "I was trying to see if you had a one time payment offer to where you could get it out of the way possibly if it is something that the attorney would approve. I mean, do you have a certain amount that you maybe could come up with to try to settle out this matter?"

h)    "How would you want to set this up so I can present it to the attorney to try and get it approved? $100.00 today and then how much would you be able to pay and when, how would you like to stretch those payments?"

i)    "I'm going to send you over the document after I speak here with the attorney and get that approved for a $100.00 payment today and the remaining $1,450.00 on next Tuesday, that is the 2nd of March."

j)    "The email will come from LSR Payment Processing."

k)    "Santander didn't put the original account number on their paperwork. You have an account number with our office here. It's 2021-46531."

89.    On February 25, 2021, in response to defendants' false threats of litigation, prosecution and other adverse consequences, and for the purpose of identifying and pursuing

defendants, Mr. Hitsman authorized a payment to defendants by debit card in the amount of

$100.00. According to the debit card's issuing bank, the payment was deposited into a Merchant

Account maintained in the name of "Last Step Recovery LLC," located in Georgia, telephone

number 888-892-3109.

        90.     Defendants' use of the described merchant account to receive debit card and credit

card payments from consumers defrauded by defendants violated the terms of the agreement

between defendants and defendants' acquiring bank and defendants' ISO, and violated the terms

of the agreements between defendants and Visa and MasterCard, and disqualifies defendants

from maintaining a merchant account and accessing the banking system.

        91.     On February 25, 2021, defendants sent an email from

lsrpaymentprocessing@gmail.com to Mr. Hitsman. Attached to the email was a letter, falsely

stating that Mr. Hitsman owed money to defendants' putative "CLIENT," "Last Step Santanders

2.22.21.," "ACCOUNT NO: 2021-46531." The letter purported to be from "Samantha Harris,"

telephone number 833-922-3500. A copy of the email and letter are attached hereto as Exhibit A.

        92.     On March 1, 2021, Mr. Hitsman sent an email to defendants at

lsrpaymentprocessing@gmail.com, stating that Mr. Hitsman would not be making an additional

payments to defendants.

        93.     On March 1, 2021, defendants' employee and agent made a call from telephone

number 517-489-3016 to Mr. Hitsman and left the following message on Mr. Hitsman's voice

mail: "Hi Mr. Hitsman. This is Samantha Harris with the law firm of Gonzales Law Firm. I got

your email in regards to your payment tomorrow, you said not to pull the money out your

account. So I was calling to let you know that we are going to push this forward and we will be

serving you to come to court because you agreed to the terms and conditions of the settlement offer, as of now due to your email the settlement offer does not, does not remain. You will be served to go to court. If you want to keep the settlement offer you need to keep your arrangement, is your payment to pay $1,450.00, if not we're serving you to court. If you want to keep that arrangement contact me at the office. Again, this is Samantha, phone number 833-922-3500. Thank you."

94.    The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful credit identity theft and debt collection scam that is ongoing and being perpetrated by ex-felons, to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

95.    Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

96.    Defendants and their employees and agents falsely represented that Mr. Hitsman owed money in connection with a counterfeit account.

97.    Defendants and their employees and agents falsely represented and inflated the amount of Mr. Hitsman's alleged debt.

98.    Defendants and their employees and agents falsely represented that Mr. Hitsman owed a debt that is not owed.

99.    Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

100.    Defendants and their employees and agents failed to provide the identity of the entity to whom the alleged debt is owed.

101.    Defendants and their employees and agents falsely represented and falsely implied that defendants are mediators.

102.    Defendants and their employees and agents falsely represented and falsely implied that Santander was defendants' client.

103.    Defendants and their employees and agents falsely represented and falsely implied that Santander had retained defendants to collect the alleged debt from Mr. Hitsman.

104.    Defendants and their employees and agents falsely represented that they were retained by Santander to file a lawsuit against Mr. Hitsman.

105.    Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Mr. Hitsman's personal and financial information, in an effort to coerce the payment of money from Mr. Hitsman.

106.    Defendants and their employees and agents wrongfully obtained and wrongfully used information regarding Mr. Hitsman's relatives, in an effort to coerce the payment of money from Mr. Hitsman.

107.    Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

108.    Defendants and their employees and agents falsely represented and falsely implied that defendants are lawyers and a law firm.

109.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Hitsman to collect the alleged debt.

27

110.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Hitsman to collect the alleged debt.

111.     Defendants and their employees and agents wrongfully threatened to file a lawsuit against Mr. Hitsman to collect a time-barred debt.

112.     Defendants did not intend to file a lawsuit against Mr. Hitsman in any court in efforts to collect the alleged debt.

113.     No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

114.     Defendants and their employees and agents falsely represented that Mr. Hitsman had committed fraud.

115.     Defendants and their employees and agents falsely represented that Mr. Hitsman had defrauded a financial institution.

116.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Hitsman had committed a crime.

117.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Hitsman was being criminally charged with defrauding a financial institution.

118.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Hitsman was going to be arrested and prosecuted unless Mr. Hitsman paid money to defendants.

119.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

28

120.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

121.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

122.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

123.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

124.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

125.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

126.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

127.    The FDCPA states that it is unlawful for a debt collector to threaten to take any

29

action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

128.     The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that the consumer committed a crime or other conduct in order to disgrace the consumer.

15 U.S.C. § 1692e(7).

129.     The FDCPA states that it is unlawful for a debt collector to communicate to any

person credit information which is known or which should be known to be false. 15 U.S.C. §

1692e(8).

130.     The FDCPA states that it is unlawful for a debt collector to use any false

representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. §

1692e(10).

131.     The FDCPA states that it is unlawful for a debt collector to communicate in a

communication with a consumer to fail to disclose that the communication is from a debt

collector. 15 U.S.C. § 1692e(11).

132.     The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that documents are legal process. 15 U.S.C. § 1692e(13).

133.     The FDCPA states that it is unlawful for a debt collector to use any business,

company, or organization name other than the true name of the debt collector's business,

company, or organization. 15 U.S.C. § 1692e(14).

134.     The FDCPA states that it is unlawful for a debt collector to use unfair or

unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

135.     The FDCPA states that it is unlawful for a debt collector to collect any amount

unless such amount is expressly authorized by the agreement creating the debt or permitted by

law.  15 U.S.C. § 1692f(1).

136.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C.

§§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13)

and (14), and 1692f and 169f(1).

137.    The FDCPA requires that, within five days of the initial communication with a

consumer in connection with the collection of any debt, a debt collector shall, unless the required

information is contained in the initial communication or the consumer has paid the debt, send the

consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

138.    Defendants and their employees and agents failed to timely send to Mr. Hitsman

a notice containing the information required by 15 U.S.C. § 1692g(a).

139.    Each defendant and each defendant's employees, managers, owners, agents,

affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful

debt collection practices that are described in this complaint.

140.    Defendants and their employees, managers, owners, agents, affiliates and co-

conspirators each have intentionally and wilfully violated the FDCPA.

141.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate

abusive debt collection practices by debt collectors" and "to insure that those debt collectors who

refrain from using abusive debt collection practices are not competitively disadvantaged."  15

U.S.C. § 1692(e).

142.    Defendants and their employees, managers, owners, agents, affiliates and co-

conspirators, to increase their business and profits, have knowingly chosen to use debt collection

practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who

31

have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

143.    Michigan law, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

144.    Defendants engaged in criminal extortion, a felony, in their efforts to coerce the payment of money from Mr. Hitsman. It is an express violation of the FDCPA to commit a crime in connection with efforts to collect an alleged debt.

145.    Defendants violated the Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, in their efforts to coerce the payment of money from Mr. Hitsman. It is an express violation of the FDCPA to commit a crime in connection with efforts to collect an alleged debt.

146.    Defendants have regularly, repeatedly and falsely communicated to Mr. Hitsman and other consumers that defendants are attorneys, and have repeatedly engaged in the unauthorized practice of law, a crime. Ga. Code Ann. §§ 15-19-51, 15-19-56 (West 2021). It is an express violation of the FDCPA to commit a crime in connection with the collection of any debt.

147.    In connection with efforts to collect an alleged debt from Mr. Hitsman, defendants obtained and used personal information regarding Mr. Hitsman and his relatives from

an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint),

TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe),

or Interactive Data, LLC.

148.    The database used by defendants was derived in part from non-public motor

vehicle records and searches made with the database are subject to the terms of the Drivers

Privacy Protection Act. Subscribers to the database must sign an application stating that the

subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the

database, the subscriber is confronted with a screen that requires the subscriber to affirmatively

state the permissible purpose under the DPPA for which the subscriber is requesting the personal

information.

149.    The DPPA was enacted in response to growing concerns over the ease with which

stalkers and other criminals could obtain personal information from state departments of motor

vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

150.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person
> knowingly to obtain or disclose personal information, from a motor vehicle
> record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false
>  representation to obtain any personal information from an individual's motor
> vehicle record.

18 U.S.C. § 2722.

151.    The DPPA also states:

> "personal information" means information that identifies an individual, including
> an individual's photograph, social security number, driver identification number,
> name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

33

152.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

153.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

154.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Hitsman and his relatives.

155.    Defendants used the database to obtain, disclose and use personal information regarding Mr. Hitsman and his relatives.

156.    Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Hitsman and his relatives that was derived from motor vehicle records.

157.    Alternatively, the entity that obtained Mr. Hitsman's and his relatives' personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Hitsman and his relatives that was derived from motor vehicle records.

158.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723. It is an express violation of the FDCPA to commit a crime in connection with efforts to collect an alleged debt.

159.    Defendants knowingly obtained, disclosed and used Mr. Hitsman's and his relatives' personal information, obtained from motor vehicle records, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

160.     No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Hitsman's or his relatives' personal information obtained from the database.

161.     No defendant had Mr. Hitsman's or his relatives' consent, permission, authorization or waiver to obtain Mr. Hitsman's or his relatives' personal information from the database.

162.     A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

163.     The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

164.     Defendants intentionally and wilfully violated the DPPA.

165.     Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

166.     As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

**V.     Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

167.     Plaintiff incorporates the foregoing paragraphs by reference.

168.   Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)   Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)   Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)   Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)   Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)   Such further relief as the court deems just and proper.

## Count 2 – Drivers Privacy Protection Act

169.   Plaintiff incorporates the foregoing paragraphs by reference.

170.   Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)   Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)   Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining or using plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

**Count 3 – Michigan Regulation of Collection Practices Act**

171.    Plaintiff incorporates the foregoing paragraphs by reference.

172.    Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or

abusive method to collect a debt;

f)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

g)      Defendants violated M.C.L. § 445.258 by communicating with plaintiff's

daughter.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

173.    Plaintiff incorporates the foregoing paragraphs by reference.

174.    Each defendant has violated the MOC.  Each defendant's violations of the MOC

include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a

misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the

purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

f)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.919 by communicating with plaintiff's brother.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).


Dated: March 3, 2021                              /s/ Phillip C. Rogers
                                                 Phillip C. Rogers (P34356)
                                                 Attorney for Plaintiff
                                                 6140 28th Street SE, Suite 115
                                                 Grand Rapids, Michigan 49546-6938
                                                 (616) 776-1176
                                                 ConsumerLawyer@aol.com